1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                        **FOR THE DISTRICT OF ARIZONA**
8
9    Monty L. Helms,                          No. CV-14-1876-PHX-NVW (ESW)
10                    Petitioner,              **REPORT AND**
11   v.                                        **RECOMMENDATION**
12   Charles L. Ryan, et al.,
13                    Respondents.
14
15
16   **TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:**
17           Pending before the Court is Monty L. Helms' ("Petitioner") Petition under 28
18   U.S.C. § 2254 for a Writ of Habeas Corpus (the "Petition") (Doc. 1). Respondents have
19   filed their Answer (Doc. 10), and Petitioner has filed a Reply (Doc. 11). The matter is
20   deemed ripe for consideration.
21           The Petition contains four grounds for federal habeas relief. Although the Petition
22   is timely, the undersigned finds that Ground One is procedurally defaulted and the
23   remaining grounds are meritless. It is therefore recommended that the Petition be denied
24   and dismissed with prejudice.
25                               **I.  BACKGROUND**
26           In March 2009, police officers executed a search warrant for Petitioner's residence
27   in Apache Junction, Arizona. (Doc. 1-6 at 148-49). Officers found the following items
28   in Petitioner's bedroom:  $1,210 in cash strewn on the floor, a glass pipe, a small

electronic scale with methamphetamine residue, two motor vehicle titles in Petitioner's name, and a locked safe.  (Doc. 10-1 at 55; Doc. 1-6 at 21-26, 58, 159-169, 182-96).  Officers pried the safe open and found two loaded firearms, an eyeglass case containing syringes and a baggie of methamphetamine, empty baggies, a baggie of methamphetamine, a scale with methamphetamine residue, and a manila envelope with a handwritten note addressed to "Monte."  (Doc. 1-6 at 169-96).

Petitioner was indicted on three counts: (i) possession of a dangerous drug for sale in violation of ARIZ. REV. STAT. § 13-3407(A); (ii) possession of drug paraphernalia in violation of ARIZ. REV. STAT. § 13-3415(A); and (iii) misconduct involving weapons in violation of ARIZ. REV. STAT. § 13-3102(A)(8).  (Doc. 1-3 at 63).  Following a settlement conference, the parties reached a plea agreement.  (Doc. 1-2 at 94).  The plea agreement contained a stipulated sentence of 2.5 years.  (*Id*. at 94-95).  At the hearing on August 4, 2009, Petitioner requested to withdraw from the plea agreement.  The trial judge told Petitioner that the settlement conference judge "filled me in a little bit on what's going on with this case.  You're passing up a sweetheart of a deal.  It's your choice.  Do you want me to not accept the plea agreement . . . .[?]"  (Doc. 1-8 at 97-98).  Petitioner confirmed his desire to withdraw from the plea agreement, stating that "I think I can beat this case, your honor."  (*Id*. at 97).  The trial judge then stated on the record that Petitioner withdrew from the plea agreement.  (*Id*. at 98).

On April 8, 2010, Petitioner's trial counsel filed a motion to suppress the evidence obtained during a search warrant, arguing that (i) the information used to obtain the search warrant was stale and (ii) police officers violated the knock and announce rule when executing the search warrant.  (Doc. 10-3 at 23).  The trial court denied the motion to suppress after holding an evidentiary hearing.  (*Id*. at 51).

After a two-day jury trial, Petitioner was found guilty as charged.  (Doc. 10-1 at 13, 16-21).  The Pinal County Superior Court sentenced Petitioner to a total of 12.5 years in prison.  (*Id*. at 17-18).

Petitioner timely raised two claims on direct appeal.  (*Id*. at 23-47).  In the first

1  claim, Petitioner argued that he was denied his right to an automatic change of judge after

2  withdrawing from his guilty plea.  (*Id*. at 39-40).  Petitioner did not request a change of

3  judge, but asserted that the trial court should have advised him of the right.  (*Id*. at 40).

4  In the second claim, Petitioner challenged the sufficiency-of-the-evidence to sustain

5  guilty verdicts as to Counts One and Three (possession of a dangerous drug for sale and

6  misconduct involving weapons).  (*Id*. at 40-45).  On July 29, 2011, the Arizona Court of

7  Appeals affirmed Petitioner's convictions and sentences.  (*Id*. at 2-9).  Petitioner did not

8  petition the Arizona Supreme Court for review.

9          On July 5, 2011, Petitioner filed a notice of post-conviction relief ("PCR").  (*Id*. at

10  78-80).   In his PCR petition, Petitioner argued that his trial counsel's "woefully

11  inadequate" motion to suppress and failure to call two individuals as witnesses at trial

12  deprived Petitioner of the effective assistance of counsel.  (Doc. 10-2 at 30-35).  The trial

13  court denied the PCR petition on the merits.  (Doc. 10-5 at 2-3).  Petitioner filed a

14  petition for review in the Arizona Court of Appeals.  (*Id*. at 5-7).  On April 11, 2014, the

15  Arizona Court of Appeals granted review, but denied relief.  (*Id.* at 53-58).

16          On August 22, 2014, Petitioner filed the Petition seeking federal habeas relief.

17  Respondents answered on December 29, 2014 (Doc. 10).  Petitioner replied on January

18  22, 2015.  (Doc. 11).

## II.  FEDERAL HABEAS LAW

20          Respondents do not argue, and the undersigned does not find, that the Petition is

21  barred by the one-year statute of limitations set forth in the Antiterrorism and Effective

22  Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214.[1]   The following principles

23  govern review of Petitioner's grounds for habeas relief.

### A.  Exhaustion-of-State-Remedies Doctrine

25          For over one hundred years, it has been settled that a "state prisoner must normally

26  exhaust available state remedies before a writ of habeas corpus can be granted by the

_____

[1] The one-year statute of limitations for a state prisoner to file a federal habeas
petition is codified at 28 U.S.C. § 2244(d).

federal courts." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) ("It has been settled since *Ex parte Royall*, 117 U.S. 241, 6 S. Ct. 734, 29 L.Ed. 868 (1886), that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus."). The rationale for the doctrine relates to the policy of federal-state comity. *Picard*, 404 U.S. at 275 (1971). The comity policy is designed to give a state the initial opportunity to review and correct alleged federal rights violations of its state prisoners. *Id.* In the U.S. Supreme Court's words, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Darr v. Burford*, 339 U.S. 200, 204 (1950); *see also Reed v. Ross*, 468 U.S. 1, 11 (1984) ("[W]e have long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power.") (citations and internal quotation marks omitted).

The exhaustion doctrine is codified at 28 U.S.C. § 2254. That statute provides that a habeas petition may not be granted unless the petitioner has (i) "exhausted" the available state court remedies; (ii) shown that there is an "absence of available State corrective process"; or (iii) shown that "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

Case law has clarified that in order to "exhaust" state court remedies, a petitioner's federal claims must have been "fully and fairly presented" in state court. *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014). To "fully and fairly present" a federal claim, a petitioner must present both (i) the operative facts and (ii) the federal legal theory on which his or her claim is based. This test turns on whether a petitioner "explicitly alerted" a state court that he or she was making a federal constitutional claim. *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1204–05 (9th Cir. 2005). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made." *Anderson v. Harless*,

459 U.S. 4, 6 (1982) (citation omitted); *see also Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001) (federal basis of a claim must be "explicit either by citing federal law or the decisions of federal courts, even if the federal basis is self-evident or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds").

## B.  Procedural Default Doctrine

If a claim was presented in state court, and the court expressly invoked a state procedural rule in denying relief, then the claim is procedurally defaulted in a federal habeas proceeding.  *See, e.g., Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001). Even if a claim was not presented in state court, a claim may be procedurally defaulted in a federal habeas proceeding if the claim would now be barred in state court under the state's procedural rules.  *See, e.g., Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

Similar to the rationale of the exhaustion doctrine, the procedural default doctrine is rooted in the general principle that federal courts will not disturb state court judgments based on adequate and independent state grounds.  *Dretke v. Haley*, 541 U.S. 386, 392 (2004).  A habeas petitioner who has failed to meet the state's procedural requirements for presenting his or her federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

As alluded to above, a procedural default determination requires a finding that the relevant state procedural rule is an adequate and independent rule.  *See Id.* at 729-30.  An adequate and independent state rule is clear, consistently applied, and well-established at the time of a petitioner's purported default.  *Greenway v. Schriro*, 653 F.3d 790, 797-98 (9th Cir. 2011); s*ee also Calderon v. U.S. Dist. Court (Hayes)*, 103 F.3d 72, 74-75 (9th Cir. 1996).  An independent state rule cannot be interwoven with federal law.  *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).  The ultimate burden of proving the adequacy of a state procedural bar is on the state.  *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).  If the state meets its burden, a petitioner may overcome a procedural default by

proving one of two exceptions.

In the first exception, the petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law. *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014). To demonstrate "cause," a petitioner must show that some objective factor external to the petitioner impeded his or her efforts to comply with the state's procedural rules. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004). To demonstrate "prejudice," the petitioner must show that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 ("Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial.").

In the second exception, a petitioner must show that the failure to consider the federal claim will result in a fundamental miscarriage of justice. *Hurles*, 752 F.3d at 780. This exception is rare and only applied in extraordinary cases. *Wood v. Ryan*, 693 F.3d 1104, 1118 (9th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). The exception occurs where a "constitutional violation has probably resulted in the conviction of one who is actually innocent of the offense that is the subject of the barred claim." *Wood*, 693 F.3d at 1117 (quoting *Schlup*, 513 U.S. at 327).

### C. Reviewing Habeas Claims on the Merits

In reviewing the merits of a habeas petitioner's claims, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires federal courts to defer to the last reasoned state court decision. *Woods v. Sinclair*, 764 F.3d 1109, 1120 (9th Cir. 2014); *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013). To be entitled to relief, a state prisoner must show that the state court's adjudication of his or her claims either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

1

2

      2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

28 U.S.C. § 2254(d)(1), (2); *see also, e.g., Woods*, 764 F.3d at 1120; *Parker v. Matthews*,

4

132 S. Ct. 2148, 2151 (2010); *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

5

      As to relief under 28 U.S.C. § 2254(d)(1), "clearly established federal law" refers

6

to the holdings of the U.S. Supreme Court's decisions applicable at the time of the

7

relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Thaler v.*

8

*Haynes*, 559 U.S. 43, 47 (2010). A state court decision is "contrary to" such clearly

9

established federal law if the state court (i) "applies a rule that contradicts the governing

10

law set forth in [U.S. Supreme Court] cases" or (ii) "confronts a set of facts that are

11

materially indistinguishable from a decision of the [U.S. Supreme Court] and

12

nevertheless arrives at a result different from [U.S. Supreme Court] precedent." *Price v.*

13

*Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06

14

(2000)).

15

      As to relief under 28 U.S.C. § 2254(d)(2), factual determinations by state courts

16

are presumed correct unless the petitioner can show by clear and convincing evidence to

17

the contrary. 28 U.S.C. § 2254(e)(1); *see also Stanley v. Cullen*, 633 F.3d 852, 859 (9th

18

Cir. 2011). A state court decision "based on a factual determination will not be

19

overturned on factual grounds unless objectively unreasonable in light of the evidence

20

presented in the state-court proceeding." *Davis v. Woodford,* 384 F.3d 628, 638 (9th

21

Cir.2004) (as amended) (internal quotation marks and citation omitted).

22

### III.  ANALYSIS OF THE PETITION

23

#### A.  Ground One

24

      In Ground One, Petitioner challenges the trial court's denial of Petitioner's request

25

for a change of judge after Petitioner withdrew from his guilty plea. (Doc. 1 at 6).

26

Petitioner argues that the trial court "violated petitioner [sic] right to unbiased judge, right

27

to due process, right to fair trial as guaranteed by 4th 5th & 14th Amendments to the U.S.

28

Constitution." (*Id*.).

The claim in Ground One was presented in Petitioner's Opening Brief on direct appeal. (Doc. 10-1 at 39-40). Petitioner argued that the trial court violated Rule 17.4(G) of the Arizona Rules of Criminal Procedure when it denied Petitioner's request for a change of judge. Rule 17.4(G) states that "If a plea is withdrawn after submission of the presentence report, the judge, upon request of the defendant, shall disqualify himself or herself . . . ." (*Id*. at 39). Citing to the Arizona Court of Appeals case *State v. Barnett*, 738 P.2d 783 (Ariz. Ct. App. 1987), Petitioner argued that "[t]his right is automatic, when the defendant has exercised his option to withdraw from his guilty plea." (*Id*.). Petitioner's Opening Brief does not allege that the trial court's denial of Petitioner's change of judge request violated federal law.

Significantly, Petitioner presented the claim in Ground One as a question of *state* law, not federal law, on direct appeal. Although the *Barnett* decision states that there is no federal constitutional due process right to excuse a judge upon rejection of a plea agreement, "citation to a state case that discusses federal precedents does not necessarily put the state supreme court on notice that petitioner is claiming a violation of a federal right." *Galvan*, 397 F.3d at 1202. It is a fair reading of Petitioner's Opening Brief to conclude that Petitioner cited *Barnett* only to support Petitioner's state-law claim that the trial court violated Rule 17.4(G) of the Arizona Rules of Criminal Procedure. Thus, Petitioner's citation to *Barnett* was not sufficient to put the Arizona Court of Appeals on notice that Petitioner was claiming a violation of a federal right. *See id.; Peterson v. Lampert*, 319 F.3d 1153, 1158-59 (9th Cir. 2003) (rejecting claim that citation to state cases analyzing federal constitutional claim constituted fair presentation given that a "fair reading of [defendant's] counseled petition [for review] was that the cases were cited only to support a state-law claim"); *Casey v. Moore*, 386 F.3d 896, 912 n.13 (9th Cir. 2004) (mere citation to state case discussing both state and federal issues does not fairly present federal issue).

Petitioner's failure to alert the Arizona state court to the federal nature of his claim amounts to a failure to exhaust state remedies. *Duncan v. Henry*, 513 U.S. 364, 366

(1995).   While a petitioner is not required to recite "book and verse on the federal constitution," *Picard*, 404 U.S. at 277-78 (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).   Petitioner deprived the Arizona state court of the initial opportunity to review and correct the federal rights violation Petitioner now alleges in Ground One.

Moreover, because Petitioner would be precluded from post-conviction relief on Ground One under Rule 32 of the Arizona Rules of Criminal Procedure, Ground One is technically exhausted and deemed procedurally defaulted.[2]   *Beaty*, 303 F.3d at 987 (a claim is procedurally defaulted "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the requirement would now find the claims procedurally barred") (quoting *Coleman*, 501 U.S. at 735 n.1)).

As discussed previously, the merits of a habeas petitioner's procedurally defaulted claims are to be reviewed if the petitioner (i) shows cause for the default and actual prejudice as a result of the alleged violation of federal law or (ii) shows that the failure to consider the federal claim will result in a fundamental miscarriage of justice.  *McKinney v. Ryan*, 730 F.3d 903, 913 (9th Cir. 2013).   Here, Petitioner offers no material reason to excuse the procedural default of Ground One, except for alleging that "he is actually innocent of misconduct involving weapons to further a felony drug offense."  (Doc. 11 at 11).   This vague and conclusory statement is insufficient to excuse Petitioner's procedural default of Ground One.  *See Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir.

---

[2] Rule 32.2 of the Arizona Rules of Criminal Procedure precludes a defendant from post-conviction relief based upon any ground (i) raisable on direct appeal under Rule 31 or on post-trial motion under Rule 24; (ii) finally adjudicated on the merits on the appeal or in any previous collateral proceedings; or (iii) that has been waived at trial, on appeal, or in any previous collateral proceedings.  In addition, Ground One would be precluded in a post-conviction relief proceeding as untimely under Rule 32.4 of the Arizona Rules of Criminal Procedure.  *See O'Sullivan v. Boerkel*, 526 U.S. 838, 848 (1999) (where habeas petitioner was time-barred from presenting his claims in state court, claims were procedurally defaulted).

2013) ("we have denied access to the *Schlup* gateway where a petitioner's evidence of innocence was merely cumulative or speculative or was insufficient to overcome otherwise convincing proof of guilt").

For the above reasons, the undersigned recommends that the Court dismiss Ground One.

## B. Ground Two

In Ground Two, Petitioner states:

> Petitioner's conviction was obtained as a result of evidence that was insufficient to persu[a]de a properly instructed, reasonable jury of his guilt beyond a reasonable doubt. This violated petitioner's right to due process of the law as guaranteed by the 4th 5th & 14th Amendments to the U.S. Constitution. *See Jackson v. Virgin[i]a*, 443 U.S. @ 407.

(Doc. 1 at 8).

Petitioner presented this claim on direct appeal as to Count One (possession of a dangerous drug for sale) and Count Three (misconduct involving weapons).[3] (Doc. 10-1 at 40-45). The Arizona Court of Appeals found that sufficient evidence supported Petitioner's convictions and rejected Petitioner's claim. (Doc. 10-1 at 59). As explained below, sufficiency-of-the-evidence claims on federal habeas review are evaluated under the standard set forth in 28 U.S.C. § 2254(d)(1). To succeed on Ground Two, Petitioner must show that the Arizona Court of Appeals' decision is contrary to, or involved an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court. For sufficiency-of-the-evidence claims, the relevant U.S. Supreme Court case is *Jackson v. Virginia*, 443 U.S. 307 (1979).

In *Jackson*, the Court held that a sufficiency-of-the-evidence claim must be rejected unless, based on the evidence presented at trial, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. All evidence must be considered in the light most favorable to the prosecution. *Id.* at 319; *Jones v.*

---

[3] To the extent Ground Two is challenging the sufficiency-of-the-evidence regarding Petitioner's conviction on Count Two (possession of drug paraphernalia), the claim is not exhausted and procedurally defaulted for the reasons explained in Section III(A) regarding the procedural default of Ground One.

*Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).   While the standard under *Jackson* is deferential, AEDPA applies an additional layer of deference in federal habeas cases.   *See Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).   A federal court may overturn a state court decision rejecting a sufficiency-of-the-evidence challenge "only if the state court decision was 'objectively unreasonable.'"   *See Cavazos v. Smith*, 132 S.Ct. 2, 4 (2011) (per curiam); *see also Juan H.*, 408 F.3d at 1275 n. 13.   This "double dose of deference . . . can rarely be surmounted."   *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2723 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012) (per curiam) ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.").

Moreover, because "a court under *Jackson* makes no 'determination of the facts' in the ordinary sense of resolving factual disputes," a *Jackson* claim presented in a federal habeas petition is evaluated under 28 U.S.C. § 2254(d)(1) (unreasonable application of federal law), not 28 U.S.C. § 2254(d)(2) (unreasonable determination of the facts).   *Sarausad v. Porter*, 479 F.3d 671, 677 (9th Cir. 2007), *vacated in part on other grounds,* 503 F.3d 822 (9th Cir. 2007) ("We have recently joined our sister circuits in using § 2254(d)(1) to evaluate a state court's sufficiency-of-the-evidence determination under *Jackson*") (citing *Juan H.*, 408 F.3d at 1274); *see also Flores v. Beard*, 533 F. App'x 730, 731 n.1 (9th Cir. 2013) ("Because we 'evaluate a state court's resolution of a *Jackson* sufficiency-of-the-evidence claim in all cases under § 2254(d)(1) rather than § 2254(d)(2),' we do not address [petitioner]'s § 2254(d)(2) argument."); *Emery v. Clark*, 643 F.3d 1210, 1213-14 (9th Cir. 2011) ("When we undertake collateral review of a state court decision rejecting a claim of insufficiency of the evidence pursuant to 28 U.S.C. § 2254(d)(1), . . . we ask only whether the state court's decision was contrary to or reflected an unreasonable application of *Jackson* to the facts of a particular case.").

The following are excerpts of the Arizona Court of Appeals' decision rejecting Petitioner's claim:

In [Petitioner's] bedroom, [Apache Junction Police] officers found $1,210 in cash strewn on the floor, a glass pipe next to a desk, and an electronic scale on the floor under the desk. Another electronic scale was found on the bed. Inside a portable safe in the bedroom, they found two firearms, an eyeglass case containing three syringes and a plastic bag of methamphetamine, small plastic bags that commonly are used for packaging small quantities of drugs, another plastic bag containing methamphetamine, a small scale, a manila envelope containing the titles to a motorcycle and a truck both in [Petitioner's] name, and a note to "Monte" signed with a heart. . . .

[Petitioner's] former neighbor, R.L., testified that another man living at [Petitioner's] residence had offered R.L. the use of the safe to store guns and had opened it with a combination and a key. At that time the safe had been stored in R.L.'s backyard in a shed, but had been moved into [Petitioner's] residence shortly before the search. Although officers found ammunition in the guns, the neighbor did not believe the guns had been loaded when he put them in the safe.

. . . .

To support his contention that [Petitioner] did not possess the drugs or weapons in the safe, [Petitioner] relies heavily on "the fact that [he] was unable to provide police with the combination to the safe." But . . . more than one inference can be drawn from that evidence. . . . [T]he jury reasonably could have inferred that [Petitioner] was being untruthful about owning the safe and refused to cooperate with the police in providing the combination. There was ample other evidence that [Petitioner] had possession of the items in the safe: the safe was in his bedroom, and it contained vehicle titles in his name and a note addressed to him.

[Petitioner] also argues there is insufficient evidence of weapons misconduct . . . . [ARIZ. REV. STAT.] § 13-3102(A)(8) does not require the defendant to have actual

- 12 -

1
2
3
4
5
6
7
8
possession of a weapon.   Rather, actual or constructive possession suffices so long as the state proves "that the defendant intended to use or could have used the weapon to further the felony drug offense underlying the weapons misconduct charge." *Petrak*, 198 Ariz. 260, ¶ 19, 8 P.3d at 1180.   As stated above, the jury could have found he had constructive possession of the firearms in the safe.  And there was additional evidence that he had intended to use or could have used those firearms to further the sale of methamphetamine: the guns that had been unloaded when R.L. placed them in the safe were found loaded in the safe with the drugs.  We find no error.

9    (Doc. 10-1 at 6-9).

10    Petitioner challenges the Arizona Court of Appeals' decision on several grounds,

11   which primarily pertain to evidence regarding possession of the safe.   First, Petitioner

12   states that he recently discovered audio-recordings of witness statements that his trial

13   counsel allegedly never listened to or had transcribed for use at trial.  Petitioner concedes

14   that the State disclosed these audio-recordings to trial counsel fourteen days before

15   Petitioner's trial.   (Doc. 1 at 8-9).   Petitioner believes the recordings may contain

16   potentially exculpatory evidence that Petitioner did not have possession of the safe.  (*Id.*

17   at 9-10).  Petitioner argues that due to this "newly discovered evidence," it is "vertually

18   [sic] impossible to view all the facts."   (*Id.* at 9).  The audio-recordings, however, are

19   irrelevant to Petitioner's *Jackson* claim because the recordings were not presented at

20   Petitioner's trial.  *Jackson*, 443 U.S. at 324 ("the applicant is entitled to habeas corpus

21   relief if it is found that *upon the record evidence adduced at the trial* no rational trier of

22   fact could have found proof of guilt beyond a reasonable doubt") (emphasis added).

23    Second, Petitioner asserts that "the safe belonged to Steven Hildreth, an

24   individual present in residence at the time of search."   (Doc. 1 at 10).   According to

25   Petitioner, Mr. Hildreth was the only person able to access the safe.  Petitioner also

26   points to the lack of direct evidence establishing Petitioner's connection to the safe (e.g.

27   none of Petitioner's fingerprints were found on items in the safe, no direct evidence that

28   Petitioner directed that the safe be placed in his residence or placed items in the safe,

1   and evidence that Petitioner denied the ability to open the safe when requested by

2   police officers). (Doc. 1 at 10-11; Doc. 11 at 12). These arguments fail to establish that

3   the Arizona Court of Appeals unreasonably applied *Jackson*.

4          Under Arizona law, a person has constructive possession of an item if it can be

5   inferred the person had knowledge of the property and dominion or control over the area

6   where it was found. *State v. Cox*, 155 P.3d 357, 359 (Ariz. Ct. App. 2007). Possession

7   can be sole or joint. *Id*. Thus, a rational juror could find that Mr. Hildreth owned the

8   safe, but also find that Petitioner jointly possessed the safe. Moreover, the lack of direct

9   evidence such as fingerprints linking Petitioner to the contents within the safe is not

10  dispositive of Petitioner's claim because possession may be proven by circumstantial

11  evidence. *Id*.; *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) ("Circumstantial

12  evidence and inferences drawn from [the record] may be sufficient to sustain a

13  conviction.") (internal quotation marks and citation omitted). Finally, as noted by the

14  Arizona Court of Appeals, Petitioner's statement to police officers that Petitioner could

15  not open the safe does not compel the conclusion that Petitioner did not possess the safe.

16  Rather, a rational juror could conclude that Petitioner lied to the police officers in an

17  effort to avoid culpability.

18         The undersigned has reviewed the record and the totality of the evidence.

19  Although the case against Petitioner was based on circumstantial evidence, viewing that

20  evidence in light most favorable to the prosecution, the undersigned finds that a rational

21  trier-of-fact could have found Petitioner guilty as charged.

22         As discussed by the Arizona Court of Appeals, a glass pipe, small electronic scale,

23  $1,200 in cash, and Petitioner's vehicle titles were found outside the safe in Petitioner's

24  bedroom. [4] The safe was also found in Petitioner's bedroom. A note inside the safe was

25  addressed to "Monte." While Petitioner spells his first name ending with a "y" instead of

26

27         [4] The Arizona Court of Appeals' decision states that two vehicle titles in
    Petitioner's name were also found inside the safe, but an officer at the scene testified at
28  trial that the titles were found in the bedroom outside the safe. (Doc. 1-6 at 188-89). This
    discrepancy does not change the conclusion that the Court of Appeals' decision is not
    objectively unreasonable.

an "e," it is reasonable to conclude that the note was intended for Petitioner.  The spelling variation is not significant and there was no evidence that any other individual named "Monte" was involved with the safe.

In addition, Petitioner's neighbor testified that the guns should not have been loaded when he placed them in the safe.  (Doc. 1-6 at 59-60).  An officer testified that it is common to find loaded guns with individuals who sell drugs.  (*Id*. at 41).  The officer explained that the guns are needed for protection because "[i]t's common for dope people that sell illegal drugs to rip each other off."  (*Id*.).  Thus, in light of the evidence that Petitioner was selling methamphetamine, a juror may reasonably infer that Petitioner loaded the firearms after the safe was placed in his bedroom.  Based on all the evidence, the undersigned finds a rational juror could infer that because Petitioner had possession of the drug paraphernalia outside the safe, Petitioner also had possession of the drugs, drug paraphernalia, and firearms found inside the safe that was stored in Petitioner's bedroom.

It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319; *see Walters*, 45 F.3d at 1358.  As the Ninth Circuit has explained, "[t]he question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached."  *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991) (citing *Jackson,* 443 U.S. at 326).  Because the Arizona Court of Appeals did not unreasonably apply *Jackson*, the undersigned recommends that the Court deny Ground Two.

## C. Grounds Three and Four

Grounds Three and Four of the Petition raise ineffective assistance of counsel ("IAC") claims regarding Petitioner's trial counsel.  Claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, a petitioner arguing an IAC claim must establish that his or her counsel's performance was (i) objectively deficient and (ii) prejudiced the petitioner.

*Strickland*, 466 U.S. at 687.  This is a deferential standard, and "[s]urmounting *Strickland's* high bar is never an easy task." *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).  In the habeas context, the issue is whether there is a "reasonable argument that counsel satisfied *Strickland's* deferential standard, such that the state court's rejection of the IAC claim was not an unreasonable application of *Strickland*.  Relief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir. 2014) (internal quotation marks and citation omitted).  Hence, a review of *Strickland* claims under AEDPA is "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) ("We take a 'highly deferential' look at counsel's performance [pursuant to *Strickland,* 466 U.S. at 689], through the 'deferential lens of § 2254(d)'. . . .).

In assessing the performance factor of *Strickland's* two-part test, a court must try not "to second-guess counsel's assistance after conviction." *Clark*, 769 F.3d at 725 (internal quotation marks and citation omitted).  To be constitutionally deficient, counsel's representation must fall below an objective standard of reasonableness such that it was outside the range of competence demanded of attorneys in criminal cases. *Id*.  A reviewing court considers "whether there is any reasonable argument" that counsel was effective. *Rogovich v. Ryan*, 694 F.3d 1094, 1105 (9th Cir. 2012).

To establish the prejudice factor of *Strickland's* two-part test, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In other words, it must be shown that the "likelihood of a different result [is] substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Although the performance factor is listed first in *Strickland's*  two-part test, a court may consider the prejudice factor first.  In addition, a court need not consider both factors if the court determines that a petitioner has failed to meet one factor. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of

1   sufficient prejudice, which we expect will often be so, that course should be followed.");

2   *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) (a court need not look at both

3   deficiency and prejudice if the habeas petitioner cannot establish one or the other).

4                    **1. Ground Three**

5        In Ground Three, Petitioner alleges that he was denied the effective assistance of

6   counsel in violation of his federal constitutional rights, asserting that "[t]rial counsel's

7   motion to suppress was so inadequate as to be no motion at all, because counsel was

8   ignorant of the law and below prevailing professional norms." (Doc. 1 at 12).  Petitioner

9   argues that the affidavit to the application for the search warrant was stale and all

10  evidence obtained would have been dismissed had his trial counsel argued the issue.

11  (*Id.*).

12       Petitioner presented the IAC claim in his PCR petition.  The last reasoned state

13  court decision on this claim is the April 11, 2014 Arizona Court of Appeals decision.

14  (Doc. 10-5 at 53-58).  The Court of Appeals found that the performance of Petitioner's

15  trial counsel was not deficient, stating that "[w]e agree with the trial court that, during

16  argument on the motion to suppress, counsel adequately 'br[ought] the issues before the

17  court." (*Id.* at 57).

18       Contrary to Petitioner's contentions, Petitioner's trial counsel did argue that the

19  information supporting the search warrant application was stale.   In the Motion to

20  Suppress, Petitioner's counsel stated:

21              The information provided by law enforcement to obtain the
                warrant dated from February 2009 back to May of 2008, i.e.,
22              it was from one to ten months old.   The legislature has
                determined that probable cause dissipates and no exists after
23              five days.  *State v. Miguel*, 209 Ariz. 338, 340, 101 P.3d 214,
                216 (Ct. App. 2004).  Thus there was no probable cause for
24              the warrant.

25  (Doc. 10-3 at 23).

26       At the April 20, 2010 evidentiary hearing on the Motion to Suppress, the Court

27  recognized that staleness was one of the issues raised in Petitioner's Motion to Suppress.

28  (*Id.* at 29).  Petitioner's counsel clarified that he cited *Miguel* for the principle that

1   "probable cause does not have indefinite life.  Probable cause has a short-term life."
2   (Doc. 10-3 at 47).  Petitioner's counsel argued that "if probable cause dissipates within
3   five days once a warrant is signed, why is it any different when trying to get a warrant?"
4   (*Id*. at 48).  The Court responded "[b]ecause that's what the statute says."  (*Id*.).  The
5   Court noted that "there's no bright line rule on what the age of that information is" and
6   denied the Motion to Suppress.  (*Id*.).

7          While Petitioner disagrees with the argument made by his trial counsel, "strategic
8   choices made after thorough investigation of law and facts relevant to plausible options
9   are virtually unchallengeable." *Earp v. Cullen*, 623 F.3d 1065, 1077 (9th Cir. 2010)
10  (quoting *Strickland,* 466 U.S. at 690).  Petitioner incorporates the argument made in his
11  PCR petition that "had (trial) counsel actually provided case law and argued the motion,
12  all evidence obtained would have been dismissed. . . ."  (Doc. 1 at 13).  The undersigned
13  notes that the cases that Petitioner cited in his Opening Brief to support the staleness
14  argument are from other jurisdictions.  Petitioner fails to cite any precedent binding on an
15  Arizona state court that would support his staleness argument.  Petitioner has not shown
16  how trial counsel's choice of argument as to the staleness issue rendered counsel's
17  performance constitutionally deficient.  *Clark*, 769 F.3d at 725.  Accordingly, the
18  undersigned concludes that the Arizona Court of Appeals did not unreasonably apply
19  *Strickland* when it ruled that Petitioner failed to show deficient performance by his trial
20  counsel.

21         Moreover, in its decision affirming Petitioner's convictions, the Arizona Court of
22  Appeals found that:

23          [Petitioner] has failed to show any reasonable probability that
            the trial court would have granted the motion had trial
24          counsel cited different authority.  In its response to
            [Petitioner's] petition for review, the state points out our
25          supreme court's admonition that "[t]he question of staleness
            depends more on the nature of the activity than on the number
26          of days that have elapsed since the factual information was
            gathered"; thus, "where the information evidences activity of
27          a continuous nature the passage of time becomes less
            significant."  *State v. Hale*, 131 Ariz. 444, 446, 641 P.2d

1288, 1290 (1982).  The court appears to have been aware of counsel's argument, and likely would have rejected it, even had counsel cited more appropriate authority.

(Doc. 10-5 at 57).

Given the *Hale* decision discussed in the Arizona Court of Appeals' decision above, Petitioner has failed to show that there is a substantial likelihood that the trial court would have granted Petitioner's Motion to Suppress had trial counsel made Petitioner's desired arguments.  *Bailey v. Newland*, 263 F.3d 1022, 1029 (9th Cir. 2001) ("in order to show prejudice when a suppression issue provides the basis for an ineffectiveness claim, the petitioner must show that he would have prevailed on the suppression motion, and that there is a reasonable probability that the successful motion would have affected the outcome").  Therefore, the undersigned concludes that the Arizona Court of Appeals did not unreasonably apply *Strickland* when it ruled that Petitioner failed to show how he was prejudiced by the alleged deficient performance of his trial counsel.

In sum, Petitioner has failed to show that the Arizona Court of Appeals' decision denying his IAC claim regarding the Motion to Suppress was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

### 2. Ground Four

In Ground Four, Petitioner alleges that his trial counsel was ineffective for failing to call two witnesses at trial: (i) Petitioner's girlfriend at the time, Charity Flint and (ii) Ms. Flint's sister, Rhiannon Flint.  (Doc. 1 at 14).  Petitioner asserts that these individuals "had direct personal knowledge that the safe found in [Petitioner's] residence belonged to Steve Hildreth" and "would have testified that [Petitioner] did not have a safe."  (*Id.*).

The last reasoned state court decision on the above claim is the April 11, 2014 Arizona Court of Appeals' decision.  Citing to *Strickland*, the Court of Appeals found that Petitioner:

failed to establish a colorable claim of counsel's deficiency or

- 19 -

1
2
3
4
5
6

> resulting prejudice based on the omission of testimony from [Petitioner's] girlfriend and her sister. The jury had already heard evidence that the safe did not belong to [Petitioner], and, as the state suggests, the two sisters were subject to impeachment based on their close relationships with [Petitioner], their admissions of drug use, and their seemingly implausible statements made to the police after [Petitioner's] arrest.

7  (Doc. 10-5 at 58).

8          Reasonable tactical decisions, including decisions regarding counsel's presentation
9  of a case, are "virtually unchallengeable." *Strickland*, 466 U.S. at 687-90. Disagreement
10 with a reasonable tactical decision not to call a particular witness cannot form the basis of
11 an IAC claim. *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001). However, a
12 failure by trial counsel to conduct a reasonable investigation and present mitigating
13 evidence may constitute ineffective assistance of counsel. *Rompilla v. Beard*, 545 U.S.
14 374, 383-84 (2005).

15         In presenting an IAC claim based on counsel's failure to call a witness, the
16 petitioner must (i) identify the witness, *United States v. Murray*, 751 F.2d 1528, 1535
17 (9th Cir. 1985), *cert. denied,* 474 U.S. 979 (1985); (ii) show that the witness was
18 available and willing to testify, *United States v. Harden*, 846 F.2d 1229, 1231-32 (9th
19 Cir. 1988), *cert. denied,* 488 U.S. 910 (1988); and (iii) show that the witness' testimony
20 would have been sufficient to create a reasonable probability that the jury would have had
21 a reasonable doubt as to guilt, *Tinsley v. Borg*, 895 F.2d 520, 532 (9th Cir. 1990), *cert.
22 denied,* 498 U.S. 1091 (1991). Further, IAC claims based on a duty to investigate and
23 call relevant witnesses "must be considered in light of the strength of the government's
24 case." *Rios v. Rocha*, 299 F.3d 796, 808-13 (9th Cir. 2002).

25         Here, although Petitioner disagrees with trial counsel's strategy not to call Charity
26 and Rhiannon Flint as defense witnesses, that disagreement does not constitute deficient
27 performance on the part of Petitioner's trial counsel. *See Murray*, 746 F.3d at 457 (a
28 "defendant's disagreement with trial counsel's strategy does not constitute deficient
performance on the part of trial counsel"). First, trial counsel could reasonably conclude

that Charity and Rhiannon Flint would not be credible witnesses due to their admitted use of methamphetamine and marijuana.  (Doc. 10-5 at 38-39).  In addition, trial counsel could reasonably conclude that the women would not be helpful witnesses as they could have been impeached for bias.  Charity was Petitioner's girlfriend and Rhiannon was Charity's sister.  For these reasons, Petitioner has failed to show how trial counsel's performance fell below a standard of reasonableness under prevailing professional norms.  *Clark*, 769 F.3d at 725.  Accordingly, the Arizona Court of Appeals did not unreasonably apply *Strickland* in finding that Petitioner's IAC claim does not meet the performance prong of the *Strickland* test.

Given all of the evidence presented by the State, Petitioner has failed to establish that there is a "substantial, not just conceivable" likelihood of a different result if the jury had heard the testimony of Charity and Rhiannon Flint.  *See Richter*, 562 U.S. at 112.  Moreover, Petitioner has not presented any evidence that Charity and Rhiannon were available and willing to provide helpful testimony at the time of trial.  Although Petitioner's PCR counsel hired an investigator to interview Charity and Rhiannon approximately two years after Petitioner's trial, neither woman stated that they were available and willing to testify at the trial.  (Doc. 10-3 at 53-83).  The undersigned concludes that the Arizona Court of Appeals did not unreasonably apply *Strickland* when finding that Petitioner failed to establish the prejudice prong of *Strickland*.

Accordingly, Petitioner has failed to show that the Arizona Court of Appeals' decision denying his IAC claim in Ground Four was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts.  The undersigned therefore recommends that the Court deny the claim on the merits.

### D. Petitioner's Additional Requests

#### 1. Request for an Evidentiary Hearing

Petitioner requests an evidentiary hearing.  (Doc. 1 at 9).  Review of Section 2254(d) claims "is limited to the record that was before the state court that adjudicated

the claim on the merits." *Pinholster*, 131 S.Ct. at 1398.  As explained by the U.S. Supreme Court, allowing "a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*" would be contrary to the purpose of affording state courts the primary responsibility for considering a petitioner's claims.  *Id.* at 1399 ("It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

Here, all of the grounds for relief in the Petition were adjudicated on the merits in Arizona state court.  The undersigned has recommended that all of Petitioner's federal habeas claims should be denied.  Where, as here, "the record refutes the [habeas] applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (a hearing is not required if the allegations would not entitle the petitioner to relief under Section 2254(d)); *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is *not* required on issues that can be resolved by reference to the state court record.") (emphasis in original).  Therefore, the undersigned recommends that the Court deny Petitioner's request for an evidentiary hearing.

### 2.   Request for Discovery

Parties in a habeas proceeding are not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Bittaker v. Woodford*, 331 F.3d 715, 728 (9th Cir.), *cert. denied,* 540 U.S. 1013 (2003).  Rather, "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his [or her] discretion and for good cause shown grants leave to do so, but not otherwise." Rule 6(a), 28 U.S.C. foll. § 2254; *see also Bracy*, 520 U.S. at 904.  Good cause is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09

1   (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also Pham v. Terhune*, 400

2   F.3d 740, 743 (9th Cir. 2005).

3        Here, Petitioner requests "the release of the C.D.s to the defense or transcriptions

4   or taped interviews" of Charity Flint, Rhiannon Flint, Steve Hildreth, and Petitioner.

5   (Doc. 1 at 16).  The undersigned deems Petitioner's request as a request for discovery.

6   Having reviewed Petitioner's claims, however, the undersigned does not find good cause

7   to grant Petitioner leave to conduct further discovery since Petitioner cannot prevail on

8   his claims for the reasons set forth in the preceding sections.   Moreover, because

9   Petitioner is not entitled to an evidentiary hearing, his request for discovery should be

10   denied as futile.  *See Kemp v. Ryan*, 638 F.3d 1245, 1258-60 (9th Cir. 2011), *cert. denied,*

11   132 S.Ct. 553 (2011) ("[B]ecause the district court was not authorized to hold an

12   evidentiary hearing on Kemp's deliberate elicitation claim, obtaining discovery on that

13   claim would have been futile.").

14   ### 3. Request for Appointment of Counsel

15        There is no constitutional right to counsel in a habeas proceeding.   *Bonin v.*

16   *Vasquez*, 999 F.2d 425, 429 (9th Cir. 1993).   "Indigent state prisoners applying for

17   habeas corpus relief are not entitled to appointed counsel unless the circumstances

18   indicate that appointed counsel is necessary to prevent due process violations."  *Chaney*

19   *v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986), *cert. denied*, 481 U.S. 1023 (1987).

20   However, pursuant to Rule 8(c) of the Rules Governing Section 2254 Cases in the

21   United States District Courts, "[i]f an evidentiary hearing is warranted, the judge

22   must appoint an attorney to represent a petitioner who qualifies to have counsel

23   appointed under 18 U.S.C. § 3006A."  Even if an evidentiary hearing is not warranted, a

24   district court has discretion to appoint counsel for a habeas petitioner when "the interests

25   of justice so require."  18 U.S.C. § 3006A(a)(2)(B).

26        Petitioner requests the appointment of counsel.  (Doc. 1 at 9).  The undersigned

27   does not find that the interests of justice require the appointment of counsel in this case.

28   Petitioner has failed to show that the complexities of the case are such that denial of

1 appointed counsel would amount to a denial of due process. Moreover, Petitioner's

2 filings with the Court indicate that Petitioner understands the issues and is capable of

3 presenting his arguments to the Court. *See LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir.

4 1987) (affirming the denial of the appointment of counsel where a petitioner's pleadings

5 demonstrated a good understanding of the issues and an ability to present contentions

6 "forcefully and coherently"). Finally, the record is adequately developed and the

7 undersigned does not find that an evidentiary hearing is necessary. For these reasons, the

8 undersigned recommends that the Court deny Petitioner's request for appointment of

9 counsel.

## IV.  CONCLUSION

11     Based on the foregoing, the undersigned recommends that the Court deny

12 Petitioner's requests for an evidentiary hearing, discovery, and the appointment of

13 counsel. The undersigned further recommends that the Court deny and dismiss the

14 Petition (Doc. 1) with prejudice.

15     Accordingly,

16     **IT IS RECOMMENDED** that Petitioner's requests for an evidentiary hearing,

17 discovery, and the appointment of counsel be **DENIED**.

18     **IT IS FURTHER RECOMMENDED** that the Petition (Doc. 1) be **DENIED** and

19 **DISMISSED WITH PREJUDICE**.

20     **IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave

21 to proceed in forma pauperis on appeal be denied because dismissal of Ground One in the

22 Petition is justified by a plain procedural bar and Petitioner has not made a substantial

23 showing of the denial of a constitutional right in his remaining claims for relief.

24     This recommendation is not an order that is immediately appealable to the Ninth

25 Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1)

26 should not be filed until entry of the District Court's judgment. The parties shall have

27 fourteen days from the date of service of a copy of this recommendation within which to

28 file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

6, 72.  Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 30th day of September, 2015.

_____
Eileen S. Willett
United States Magistrate Judge